UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA, ex rel. and ANDREA SCHULTZ,

    Plaintiffs,

v.      Case No: 2:17-cv-237-FtM-29MRM

NAPLES HEART RHYTHM SPECIALISTS, P.A. and KENNETH PLUNKITT, Doctor,

    Defendants.

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion to Dismiss (Doc. #38) filed on September 20, 2019. Relator filed a Response in Opposition (Doc. #40) on October 4, 2019. For the reasons set forth below, the motion is denied.

**I.**

This case arises out of an alleged years-long scheme to defraud the government healthcare programs Medicare and Medicaid. Relator Andrea Schultz (Relator) filed a *qui tam* Complaint (Doc. #1) on May 4, 2017. The Government declined to intervene in this case on January 1, 2019 (Doc. #2), and Relator filed an Amended Complaint (Doc. #21) on July 3, 2019. The Amended Complaint asserts claims against defendants Naples Heart Rhythm Specialists, P.A. (NHRS) and Dr. Kenneth Plunkitt (Dr. Plunkitt) under the False

Claims Act and the Florida False Claims Act. Dr. Plunkitt filed a motion to dismiss the Amended Complaint (Doc. #32), which the Court denied on April 13, 2020 (Doc. #41).

According to the Amended Complaint (Doc. #21): Relator is a registered nurse (RN) and is employed by Naples HMA, LLC (HMA).[1] (Doc. #21, ¶ 8.)  Dr. Plunkitt is a physician who is "Board Certified in internal medicine-cardiovascular disease and internal medicine-clinical cardiac electrophysiology." (Id. ¶ 10.) NHRS "is a Florida professional association that was created in 2007 and is owned and operated by" Dr. Plunkitt. (Id. ¶ 9.) NHRS "specializes in treating cardiovascular disease and clinical cardiac electrophysiology and provides cardiac services to" Physicians Regional Medical Center (PRMC). (Id.) As part of her HMA employment, Relator works in the cardiac catheterization lab at PRMC, where she "has regularly worked alongside" Dr. Plunkitt. (Id. ¶ 8.)

Since the beginning of her time working at PRMC, Relator witnessed Dr. Plunkitt and NHRS submit "false claims to Medicare and Medicaid for [] unnecessary and dangerous lead extractions and pocket revisions performed by [Dr. Plunkitt] for pecuniary gain and not medical necessity." (Id. ¶ 25.) A lead is a "special

---

[1] HMA was named as a defendant in the initial *qui tam* Complaint, but was voluntarily dismissed by Relator on May 31, 2019. (Doc. #15).

2

wire that delivers energy from a pacemaker or [implantable cardioverter-defibrillator] to the heart muscle." (Id. ¶ 28.) Unnecessary lead extractions can be dangerous because leads "that have been in place for many years can become very attached to the heart and blood vessel walls, making them difficult to remove." (Id. ¶ 32.) According to the "Chief Medical Consultant for the California Correctional Health Care Services Office of Legal Affairs . . . the extraction of defibrillator leads is not routinely performed in the absence of an infection, particularly when . . . the leads have been in place for an extended period." (Id. ¶ 36.)

Dr. Plunkitt has performed "lead extractions on the overwhelming number of patients where [Relator] worked alongside him regardless of whether there was an infection or not." (Id. ¶ 37.) In working alongside Dr. Plunkitt during such procedures, Relator witnessed "many patients' cardiac tissue ripped out of their pericardium in large chunks." (Id. ¶ 38.)

Dr. Plunkitt performed lead extractions on patients RB, CL, IG, TP, and DO (collectively, the Representative Patients). (Id. ¶ 38.) These lead extractions were medically unnecessary because Relator "saw firsthand that there was no infection or other adverse symptom being caused by the implanted leads, and there was nothing documented by [Dr. Plunkitt] in the patient charts" indicating the need for lead extractions. (Id. ¶ 40.) When Dr. Plunkitt

3

performed lead extractions on the Representative Patients, he pulled the leads out "with a great deal of force" because the leads were "anchored into the [P]atients' heart tissue." (Id. ¶ 38.)

As part of her employment, Relator had access to Dr. Plunkitt's patient records and NHRS' billing forms. (Id. ¶ 46.) Relator observed Dr. Plunkitt fill out billing forms for the Representative Patients' "unnecessary lead removals." (Id.) Relator observed that the NHRS biller picked up the completed billing forms, and Relator overheard that she "was instructed to bill those [] codes." (Id.) Relator also observed that the Representative Patients' "unnecessary lead extractions were included in the PRMC procedure notes, which means that they were automatically billed for by NHRS." (Id.) Relator observed Dr. Plunkitt engage in such billing for medically unnecessary lead extractions for "hundreds more" patients. (Id.) In performing some unnecessary lead extractions that resulted in a patient's cardiac tissue being ripped out, Dr. Plunkitt "would quickly remove the heart tissue from [the] coil before [Relator] was able to capture a photograph of the patients' cardiac tissue having been ripped from the patients' beating heart." (Id. ¶ 38.)

Relator also witnessed Dr. Plunkitt engage in the medically unnecessary "implantation of defibrillators and pacemakers." (Id. ¶ 53.) Relator observed that Dr. Plunkitt "frequently begins to implant a defibrillator and *then* performs his own study in an

4

attempt to justify the implantation of the defibrillator after the fact and justify the billing." (Id. ¶ 57)(emphasis in original.) Dr. Plunkitt and NHRS "collected reimbursement on thousands of claims to Medicare and Medicaid for the medically unnecessary implantations." (Id. ¶ 66.)

**II.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

To survive dismissal in a False Claims Act action, a complaint must comply with Rule 9(b), which provides that "a party must state

with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); United States ex rel. Clausen v. Lab. Corp. of Am., 290 F.3d 1301, 1308 (11th Cir. 2002). The complaint "must allege the details of the defendants [sic] allegedly fraudulent acts, when they occurred, and who engaged in them." Id. (quotation and citations omitted).

### III.

Any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" is liable under the False Claims Act. 31 U.S.C. § 3729(a)(1)(A)-(B). The False Claims Act "is the primary law on which the federal government relies to recover losses caused by fraud . . . [and] creates civil liability for making a false claim for payment by the government." McNutt ex rel. United States v. Haleyville Med. Supplies, Inc., 423 F.3d 1256, 1259 (11th Cir. 2005). The Act's purpose is "to increase private citizen involvement in exposing fraud against the government . . . ." Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 565 (11th Cir. 1994). "Private citizens, called *qui tam* relators, are authorized to bring FCA suits on behalf of the United States." United States v. AseraCare, Inc., 938 F.3d 1278, 1284 (11th Cir. 2019)(citing 31 U.S.C. § 3730(b)). For her services, a relator is entitled to a substantial

percentage of the recovery. 31 U.S.C. § 3730(d). "In the healthcare context, a False Claims Act violation typically involves billing for services not provided or not medically necessary." United States v. HPC Healthcare, Inc., 723 F. App'x. 783, 788 (11th Cir. 2018)(citing United States ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1302 (11th Cir. 2010) (per curiam); Clausen, 290 F.3d at 1303).

The Florida False Claims Act likewise "authorizes a private person or the State [of Florida] to initiate a civil action against a person or company who knowingly presents a false claim to the State for payment." Barati v. State, 198 So. 3d 69, 72 (Fla. 1st DCA 2016). The Florida False Claims Act "mirrors the federal False Claims Act and is subject to the same pleading standard" noted *infra*. United States v. All Children's Health Sys., Inc., No. 8:11-CV-1687-T-27EAJ, 2013 WL 1651811, at *5 (M.D. Fla. Apr. 16, 2013).

**A.   Count I: § 3729(a)(1)(A) Claim**

Count I asserts a claim against NHRS under 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act. In essence, Relator asserts that NHRS presented claims for payment to Medicare and Medicaid which were false because a portion of its services were not medically necessary.

Section 3729(a)(1)(A) applies to "any person who-- (A) knowingly presents, or causes to be presented, a false or

fraudulent claim for payment or approval . . . ." 31 U.S.C. § 3729(a)(1)(A). With respect to information, the term "knowingly" "(A) mean[s] that a person . . . (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require[s] no proof of specific intent to defraud . . . ." 31 U.S.C. § 3729(b)(1)(A)-(B). The term "claim" "(A) means any request or demand, whether under a contract or otherwise, for money or property . . . that (i) is presented to an officer, employee, or agent of the United States . . . ." 31 U.S.C. § 3729(b)(2)(A).

NHRS argues it is entitled to dismissal of Count I because (1) Relator's assertion that Dr. Plunkitt performed medically unnecessary procedures is premised on "unqualified and unsupported opinions;" and (2) Relator failed to plead this claim with particularity, as required by Rule 9(b). (Doc. #38, pp. 11-12.) The Court finds that neither is a basis for dismissal.

**(1) Allegedly Unqualified Expert Opinions**

In the Amended Complaint, Relator asserts that "rarely is it truly medically necessary to perform a lead extraction unless the lead has caused an infection," and the "infection rate is just 1-3%." (Doc. #21, ¶ 36.) Relator further asserts that unnecessary lead extractions are dangerous when a patient's lead has "been in place for an extended period" because removal may "put a patient

8

at greater risk of an adverse health event." (Id.) Relator relies on "Chief Medical Consultant for the California Correctional Health Care Services Office of Legal Affairs, Dr. Bennett Feinberg" as support for these assertions. (Id.) As to the Representative Patients, Relator alleges the lead extractions were medically unnecessary because she observed (1) there was no infection; (2) there were no "other adverse symptom[s] being caused by the implanted leads"; and (3) their medical charts did not indicate any need to perform such lead extractions. (Id. ¶ 40.)

NHRS argues that the Court should disregard these alleged facts because under Fla. Stat. § 766.102(5)(a)-(b) Relator and Dr. Feinberg are "not permitted to offer expert opinions about the standard of care applicable to Dr. Plunkitt." (Doc. #38, p. 11.) Citing to various medical journal articles, NHRS also disputes Relator's assertions as to the lead infection rate and other medical definitions. (Doc. #38, pp. 12-13.)

Dr. Plunkitt made these same arguments in his motion to dismiss (Doc. #32, pp. 11-13), and the Court has rejected such positions (Doc. #41, pp. 8-9). As the Court previously noted, Section 766.102(5)(a)-(b) of the Florida Statutes govern who may provide expert opinion testimony in a state-law medical malpractice lawsuit, and the Court is aware of no legal basis to apply Fla. Stat. § 766.102 to the review of a federal False Claims Act complaint. Moreover, the Court may not resolve the parties'

9

disputes as to the underlying medical literature at this stage of the proceedings. See Iqbal, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

The Court therefore denies this portion of NHRS's motion to dismiss.

### (2) Whether Relator Pled Count I with Particularity

As the text of § 3729(a)(1)(A) makes clear,

> [t]he submission of a false claim is "the sine qua non of a False Claims Act violation." Clausen, 290 F.3d at 1311. "Because it is the submission of a fraudulent claim that gives rise to liability under the False Claims Act, that submission must be pleaded with particularity and not inferred from the circumstances." Corsello, 428 F.3d at 1013. Therefore, unless a relator alleges with particularity that false claims were actually submitted to the government, our precedent holds that dismissal is proper.

United States v. HPC Healthcare, Inc., 723 F. App'x. 783, 789 (11th Cir. 2018).

To plead a Section 3729(a)(1)(A) claim with sufficient particularity, a complaint must "allege the 'who,' 'what,' 'where,' 'when,' and 'how' of fraudulent submissions to the government." Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005). A relator may not "merely [] describe a private scheme in detail but then [] allege simply and without any stated reason

10

for h[er] belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." Clausen, 290 F.3d at 1311. Thus, a complaint must contain "some indicia of reliability . . . to support the allegation of *an actual false claim* for payment being made to the Government." Id. (emphasis in original).

NHRS argues that Relator has "fail[ed] to allege reliable, detailed information to identify a single false or fraudulent claim that NHRS submitted." (Doc. #38, p. 16.) The Court disagrees.

In the Amended Complaint, Relator alleges that she observed Dr. Plunkitt perform unnecessary lead extractions and "personally add[]" billing codes for such procedures on the Representative Patients' billing forms. (Doc. #21, ¶ 46.) The Amended Complaint includes the dates Dr. Plunkitt performed the allegedly unnecessary procedures on the Representative Patients, and the Amended Complaint has attached photographs of medical equipment used on the Representative Patients; in those photographs, the bag containing such medical equipment includes the date of the Representative Patients' admittance and their redacted names and dates of birth. The Amended Complaint also alleges Relator observed that (1) such forms were given to NHRS' biller, who Relator overheard "was instructed to bill those [] codes" and (2) the "unnecessary lead extractions were included in the PRMC

11

procedure notes, which means that they were automatically billed for by NHRS." (Id.)

The Court finds that such factual allegations, coupled with the Amended Complaint's attachments, provide the "the necessary indicia of reliability that a false claim was actually submitted" and thus satisfy Rule 9(b)'s particularity requirement. United States ex rel. Mastej v. Health Mgmt. Assocs., Inc., 591 F. App'x 693, 704 (11th Cir. 2014). Although Relator has not provided specific details for each allegedly unnecessary medical procedure (Relator alleges Dr. Plunkitt and NHRS billed the government for hundreds of unnecessary lead extractions and defibrillator and pacemaker implantations), NHRS is not entitled to dismissal because the Amended Complaint contains "some of [the required] information for at least some of the claims." Clausen, 290 F.3d at 1312 n.21.

NHRS also asserts that Relator did not work "in a position that gave her access to billing documents" and that "[s]he does not have any personal knowledge of or involvement in NHRS's billing." (Doc. #38, p. 16.) The Amended Complaint, however, explicitly asserts that Relator "had access to each patients' medical records and NHRS' billing form," and Relator has attached a billing form to the Amended Complaint. (Doc. #21, ¶ 46); (Doc. #21-6.) Thus, the Court accepts such well-pleaded facts as true and will not resolve disputed issues of fact at this stage of the

12

proceedings. Iqbal, 556 U.S. at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity.").

Relying on United States ex rel. Atkins v. McInteer, 470 F.3d 1350, 1353 (11th Cir. 2006) and United States v. LifePath Hospice, Inc., No. 8:10-CV-1061-T-30TGW, 2016 WL 5239863, at *1 (M.D. Fla. Sept. 22, 2016), NHRS contends that Relator only makes conclusory allegations that NHRS submitted false claims to the government. Dr. Plunkitt relied on these cases for the same proposition (Doc. #32, pp. 14-16), and the Court rejected such a position (Doc. #41, pp. 13-15). The Court likewise finds those cases unpersuasive as to NHRS.

The Amended Complaint alleges that Relator observed Dr. Plunkitt personally add billing codes for the allegedly unnecessary lead extractions, that she overheard the NHRS biller "was instructed to bill those CPT codes," and that she observed that the extractions "were included in the PRMC procedure notes, which means that they were automatically billed for by NHRS." (Doc. #21, ¶ 46.) Collectively, these alleged first-hand observations – which were not present in LifePath and Atkins - provide the required indicia of reliability to support Relator's assertion that NHRS actually submitted false claims to the government.

13

For the foregoing reasons, the Court finds Relator has alleged a Section 3729(a)(1)(A) claim with particularity under Rule 9(b). NHRS's motion is thus denied as to Count I.

**B.   Count II:  § 3729(a)(1)(B) Claim**

Count II asserts a claim against NHRS under § 3729(a)(1)(B) of the False Claims Act.  Section 3729(a)(1)(B) imposes liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . ."  NHRS argues the elements of a claim under Section 3729(a)(1)(B) include that the government pay out money or forfeit moneys due.  (Doc. #38, pp. 20-21)(citing United States ex rel. Bernier v. Infilaw Corp., 347 F. Supp. 3d 1075, 1085 (M.D. Fla. 2018)).  NHRS moves to dismiss this claim, arguing that the Amended Complaint "lacks any reliable allegation that the government ever paid [for a false] claim."  (Doc. #38, p. 21.)

The Court previously concluded that government payment is not an element of a claim under Section 3729(a)(1)(B).  (Doc. #41, pp. 15-17.)  NHRS's motion to dismiss Count II is therefore denied.[2]

---

[2] NHRS also argues it is entitled to dismissal of Count II because "the opinions on which [Relator] bases her claim are wrong or at the very least entirely inconsistent with published literature . . . ."  (Doc. #38, p. 12.)  As noted *supra*, however, the Court may not resolve disputed issues of fact at this stage of the proceedings.

14

**C. Count III:  Fla. Stat. § 68.082 Claim**

Count III asserts a claim against NHRS under Fla. Stat. § 68.082(a)-(b) of the Florida False Claims Act.  These provisions of the Florida False Claims Act impose liability on any person who:

> (a) Knowingly presents or causes to be presented a false or fraudulent claim for payment or approval; [or]
>
> (b) Knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim.

Fla. Stat. § 68.082(a)-(b).

NHRS agrees that these sections of the Florida False Claims Act mirror their federal counterparts and are subject to the same Rule 9(b) pleading standards.  NHRS argues it is entitled to dismissal of Count III for the same reasons noted in Counts I and II.  Because the Court has rejected those arguments, the Court also denies NHRS's motion as to Count III.

Accordingly, it is now

**ORDERED:**

Defendant's Motion to Dismiss (Doc. #38) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this   13th   day of May, 2020.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

15

Copies:
Counsel of Record